ADAMS v. CHADWICK.

No. 3918.

Court of Civil Appeals of Texas. El Paso.

April 18, 1940.

Upton, Upton & Baker, of San Angelo, for appellant.

R. G. Hughes, of San Angelo, and L. W. Elliott, of Sonora, for appellee.

PRICE, Chief Justice.

This is an appeal from an order of the District Court of Sutton County overruling the plea of privilege interposed by appellant, John Q. Adams, to be sued in the county of his residence. Plaintiff declared on a written lease alleged to have been executed and delivered by Culberson Ranch Company, a partnership composed of John Q. Adams and Duke Wilson. A breach of the covenant in the lease is alleged whereby the defendants bound themselves to drill a water well on or near the boundary of the premises leased to plaintiff, and damages are alleged to have resulted from such breach. Appellant Adams in due time filed the statutory plea of privilege. Appellee filed controverting affidavit, alleging residence of the defendant Duke Wilson to be in Sutton County, and by reference made the petition a part of the controverting affidavit. The controverting affidavit further sets forth that defendants each are jointly and severally liable to him for the breach of the contract alleged, and hence were proper and necessary parties. Appellee relies on the exceptions contained in Sections 4 and 29a, of Article 1995, Vernon's Ann.Civ.St., relating to venue. The evidence was undisputed that Duke Wilson was at all relevant times a resident of Sutton County.

Appellant assails the action of the trial court in substance as follows: (1) Plaintiff failed to allege a cause of action against the resident defendant, Duke Wilson; (2) plaintiff failed to show a cause of action against said defendant Wilson.

The petition of plaintiff by reference is incorporated in his controverting affidavit. In this petition the lease is set forth in full and purports to have been executed by Culberson Ranch Company, acting through appellant Adams. In the lease the Culberson Ranch Company is described as a partnership composed of John Q. Adams and Duke Wilson. The lease was for a term of three years from November 1,

1938 to the 31st day of October, 1941, same was dated October 5, 1938. Included in the lease were approximately sixteen sections of grazing land in Culberson County. Among the covenants of the lease is the following: "Lessor further contracts to drill a water well, said well to be on or close to the lessee's boundary line, and said well is to be shared with the lessor, or parties designated by him."

Plaintiff averred taking possession of the property under the lease and placing a large number of livestock thereon; further that defendant failed to drill the well contracted to be drilled; the consequent suffering of his livestock; that on account of the shortage of water it was necessary for plaintiff to dispose of his livestock and abandon the place on or about the 8th day of February, 1939. Plaintiff's suit was filed March 6, 1939.

The petition, after the averment as to the payment of the rental for the first year and plaintiff's moving numerous livestock on the land, alleges: "But that the defendants breached and disregarded their contract and failed to drill the water well on said land by the 1st day of November, 1938, or at any time since said date." Thereafter, as above narrated, follow allegations as to the result of the failure to drill the well and as to the inadequacy of the water supply available.

If breach there was of the provision in the lease quoted above, the factual base alleged to constitute the breach is the failure of defendants to drill the well before March 6, 1938, the date of the filing of plaintiff's petition. In the lease it is not provided when the lessor shall commence drilling the contemplated well, nor by what date same should be completed.

The petition fails to aver what would be a reasonable time within which to drill a water well of the character contemplated. No circumstances are alleged from which this may be deduced. In this connection, however, it should be said, it was alleged that at the time of the making of the contract the parties knew for what purpose plaintiff was leasing the land, and that same, without additional water, was inadequate for that purpose.

It seems to be assumed by each of the parties that the obligation imposed as to the water well was to drill same within a reasonable time. In our opinion this construction is correct, and same is not to be construed as a covenant to drill be-fore November 1, 1938. Lunn v. Gage, 37 Ill. 19, 87 Am.Dec. 233; 16 R.C.L. p. 792, par. 287; 10 Tex.Jur. p. 413; Self v. King, 28 Tex. 552.

The law seems to be that in order to sustain venue a cause of action must be alleged and proved against the resident defendant. Richardson v. D. S. Cage Co., 113 Tex. 152, 252 S.W. 747; 43 Tex.Jur. pp. 750-755, sects. 34-38.

Let us then first consider the question from the standpoint of the pleading. There is a breach alleged if it follows, as a necessary inference from the averment, that the failure to drill the well from October 5, 1938 to March 6, 1939, constituted a failure to drill the well within a reasonable time. In our opinion this is not a necessary inference. The covenant invoked is to be reasonably construed in the light of the circumstances surrounding the parties. It is true, plaintiff's need for the well may have been urgent; but, in our opinion, an honest and diligent effort on the part of defendants to comply with the covenant would suffice.

Where failure to perform a contract duty within a reasonable time is relied upon to constitute a breach, the petition should clearly aver facts showing what was a reasonable time for the discharge of the duty in question. J. M. Radford Grocery Co. v. Jamison, Tex.Civ. App., 221 S.W. 998; 17 C.J.S., Contracts, p. 1179, § 547.

We do not believe the above is in conflict with the case of Paine et al v. Hart-Parr Co., Tex.Com.App., 228 S.W. 121, 122. The obligation there was to pay money within a reasonable time. It was there held that the allegation, "although often requested, defendant wholly failed and refused to pay the same," sufficiently charged a non-compliance with the stipulation to pay within a reasonable time. There is no such averment in the petition under consideration. The petition contains the bald statement that there was a failure to drill the well within a given time. It is true, as stated in the case of Paine et al. v. Hart-Parr Co., supra, a liberal construction must be given the petition when assailed by a general demurrer. While the petition in the instant case is not here assailed by a general demurrer, we believe it is entitled to the same liberal construction as though such was the case. Here the plaintiff's petition is a part of

the controverting affidavit, and is a part of the evidence in the case.

In view of the fact that there is some doubt in our mind as to the correctness of the decision on the pleadings, we shall briefly discuss the sufficiency of the evidence adduced to make out a cause of action against the resident defendant, assuming the sufficiency of the pleadings.

 Duke Wilson at all relevant times was a resident of Sutton County. If he was liable in the premises, he was jointly liable with the non-resident defendant, Adams. The nature and character of plaintiff's suit made him a proper, if not a necessary, party to the cause of action. Appellee asserts, in substance, that it was not shown that Wilson was a party to the contract in question; that his plea of privilege put in issue the question of the execution of the contract by Adams and the existence of a partnership alleged between Adams and Wilson. This, we think, is correct. Adams, however, signed the contract. In the contract it is recited that Adams and Wilson were the partners composing the Culberson Ranch Company. It is true, that in the ordinary case a denial of partnership by one alleged to be a partner inures to the benefit of his co-defendant. This, however, was but a special proceeding to determine the venue of this action—venue facts only were in issue. In a sense, Wilson was not a party to the proceeding. The controversy was between Adams and the plaintiff. We think that these recitals in the written instrument as to the existence of the partnership between Wilson and Adams, in the absence of other evidence, are conclusive on Adams as to the existence of that partnership. Now it is clear that prior to about March 8, 1939, a producing water well was not drilled contiguous to the boundary between plaintiff and defendants. Plaintiff assumed throughout that the obligation of defendants was to drill a producing water well within a reasonable time. We shall, for the purposes of discussion, assume that this is correct, without so holding. There is some doubt in our mind as to whether this is a correct construction. The contract specifies in a general sort of way the location of the well contemplated, but fails to specify as to its depth, or as to who is to equip same. In the absence of such specifications, we think the case of Folmar v. Thomas, Tex.Civ. App., 196 S.W. 861, 864, has some bearing

on the questions here involved. It is there stated, "As to the houses, cribs, and wells, the same rule should be applied, in so far as the contract omitted to state the character of such improvements. Manifestly the purpose sought to be accomplished by the stipulation requiring the lessee to dig certain wells to obtain water for domestic uses; and while the contract does not guarantee that water should be procured, and does not specifically state how deep the wells should be, nor the character thereof, we hold that it placed upon the lessee and his successors an obligation to expend a reasonable amount of money or labor for the purpose of constructing such wells as are in general use in that locality." See also Schofield v. School Dist. No. 113, Labette county, 105 Kan. 343, 184 P. 480, 7 A.L.R. 788.

Now, it would seem that so long as defendants were proceeding with reasonable skill and diligence to produce the water well contemplated, that this would be a compliance with their covenant.

Appellee Chadwick testified as to the efforts of defendants to drill the well. In fact he was the only witness testifying on this point. On cross-examination he stated that when he went into possession of the premises defendants were drilling a well contiguous to the boundary; that same was drilled at a location mutually agreeable to the parties to the contract; that according to his information this well was drilled to a depth of about 500 feet and no water was obtained; that thereafter, about December 15th, a new well was started drilling by defendants contiguous to the boundary; that his information was that this well was drilled to a considerable depth, and, no water being obtained, was likewise abandoned; that on or about March 8th, defendants informed him that they had obtained water in the central portion of the leased premises at a depth of about 500 feet. This, we think, is substantially all of the testimony relative to drilling operations conducted by defendants.

 If this testimony raises the issue of failure to drill the well within a reasonable time, we must impute the finding to the trial court that the well was not drilled within a reasonable time. We do not believe that the issue is raised by the evidence. In our opinion, it is insufficient to justify a finding of a breach. There is no evidence of any complaint as

**528**

to lack of diligence on the part of defendants in drilling the well; the evidence likewise fails to show that it was not the part of prudence to abandon the two first wells in question and seek to develop water in another place; there is no evidence as to what depth it was necessary to go to demonstrate whether water could be produced; it is not disclosed as to the length of time requisite to drill a water well in the area in question; there is no evidence from which it can be reasonably inferred that the operations of defendants were not continuously skilfully and diligently prosecuted. We do not believe, from the mere fact a producing water well was not drilled before March 6th, it can be reasonably deduced that defendants breached their covenant.

However, we think that justice would be best subserved by giving the plaintiff an opportunity to amend his pleading and to adduce further proof, if he is able and desires so to do, on the question of the breach of the covenant.

It is ordered that the cause be reversed and remanded.